IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-HC-2237-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JONAH JAMES HAWKINS, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on petitioner's motion to compel (DE 29). The motion has been fully briefed and thus the issues raised are ripe for decision. For the reasons that follow, the motion is denied.

## STATEMENT OF THE CASE

On September 26, 2018, petitioner filed certification of sexually dangerous person as to respondent, pursuant to 18 U.S.C. § 4248. On October 1, 2018, the court entered case management order governing discovery and motions practice, which set initial discovery deadline of January 14, 2019. Petitioner served first set of written discovery requests on December 14, 2018. Petitioner also conducted deposition of respondent on January 7, 2019. Following the deposition, the court granted petitioner's request for extension of discovery deadline to February 28, 2019. On January 16, 2019, petitioner served supplemental discovery requests, including interrogatories and request for production of documents. As set forth below, respondent objected to each of these requests, and refused to produce any documents or provide answers to the interrogatories. Petitioner believes respondent's objections are improper or waived. Counsel for the parties attempted to resolve the

dispute through correspondence exchanged, but those efforts were not successful.

On February 28, 2019 (the final day of discovery), petitioner filed the instant motion to compel. In support of the motion, petitioner filed memorandum of law, excerpts from respondent's deposition, petitioner's discovery requests and responses thereto, and correspondence between counsel concerning the instant discovery dispute. On March 14, 2019, respondent filed response in opposition. The commitment hearing currently is scheduled for April 24, 2019.

## STATEMENT OF THE FACTS

During his deposition, respondent disclosed that he maintained certain social media accounts at a time when had absconded from probation,[1] including Facebook, Instagram, and Snapchat accounts. (Resp't's Dep. Tr. (DE 30-1) a 7-8).[2] Petitioner alleges these social media accounts "likely contain information relevant to Petitioner's case-in-chief, to include photographs and other information pertaining to known or unknown victims." (Per'r's Mem. (DE 30) at 2). Accordingly, following the deposition, petitioner served written discovery requests seeking identification of the accounts and production of all information posted to such accounts by respondent (or in the alternative, access to the accounts). (Pet'r's Discovery Requests (DE 30-2)). Respondent objected to each of these requests, asserting his Fifth Amendment right against self-incrimination. (Resp't's Resps. (DE 30-3)). The requests and respondent's objections are quoted in full below:

INTERROGATORIES PURSUANT TO RULE 33

1. Identify all social media accounts created, maintained, accessed, or utilized,

---

[1]Respondent apparently absconded from either state probation or federal supervised release, and petitioner believes he engaged in conduct relevant to the instant proceeding during such time.

[2]Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

2

either directly by you or indirectly through another individual, including any social media accounts created, maintained, accessed, or utilized on your behalf under your name or any other alias.

    (a)    Please identify the specific social media or social networking website or app where the account was created, along with the username and/or screen name utilized by the account.
    (b)    Please state the date, or approximate date if the precise date is unknown, when the social media account was created.
    (c)    Please indicate who created the account.

ANSWER: [Respondent] exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

2. For all social media accounts identified in Interrogatory #1, please identify whether the account is still active or still in existence.

ANSWER: [Respondent] exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

3. For all social media accounts identified in Interrogatory #2 as currently being active or still in existence, please indicate whether the account is a publically accessible account (meaning that any member of the public who subscribes to the social media website or application can view or access the account information), or a private account (meaning that the account may only be viewed or accessed by individuals given specific rights or access to the account information).

ANSWER: [Respondent] exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

4. For all social media accounts identified in Interrogatory #2 as being inactive or closed, please state the date, or approximate date if precise date is unknown, when the social media account was closed or terminated. Please also indicate who specifically requested or caused the account [to] be closed or terminated.

ANSWER: [Respondent] exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

## SECOND DOCUMENT REQUESTS PURSUANT TO RULE 34

1. Any and all photographs, videos, statements, documents, and/or other information posted by you or any other individual doing so on your behalf,

to any social media and/or social networking website or application, including those maintained under an alias, from June 1, 2017, to the present. In lieu of production, you may provide login information for all social media and/or social networking accounts.

[ANSWER: Respondent] exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

(Id. at 6-8).

Respondent also testified at deposition that he drafted journal entries describing events that occurred when he had absconded from supervision. (Resp't's Dep. Tr. (DE 30-1) at 10-11). After the deposition, petitioner served the following request for production of documents, and respondent objected as set forth below:

2. Any and all written statements, including notes, diaries, calendars, journals, manuscripts, or any other such documents or writings kept or created by you from June 1, 2017 to present.

[ANSWER: Respondent] objects to this request as outside the scope of permissible discovery under Federal Rule of Civil Procedure 26(b). Even assuming the request's relevance, which is not conceded, it is overbroad and not proportional to the needs of the case and therefore not allowed pursuant to Rule 26. [Respondent] also exercises his right to remain silent under the Fifth Amendment to the United States Constitution.

(Resp't's Resps. (DE 30-3) at 8). As discussed further below, respondent's correspondence with petitioner regarding the instant discovery requests also disclosed that respondent had withheld his release plan pursuant to claims of attorney work product and attorney-client privilege.

## DISCUSSION

A. Standard of Review

Federal Rule of Civil Procedure 37 provides that when a party fails to respond to discovery, the party seeking discovery can move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). When addressing a motion to compel discovery, the trial court holds broad discretion.

4

See LaRouche v. Nat'l Broadcasting Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion."). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

B. Analysis

    1. Privilege Against Self-Incrimination

The Self–Incrimination Clause of the Fifth Amendment ensures that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The privilege "applies alike to civil and criminal proceedings, whenever the answer might tend to subject to criminal responsibility him who gives it." McCarthy v. Arndstein, 266 U.S. 34, 40 (1924); see also Kastigar v. United States, 406 U.S. 441, 444 (1972) ("[The privilege] can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ."). Thus, the privilege "protects an individual not only from involuntarily becoming a witness against himself in a criminal proceeding but also from answering specific allegations in a complaint or filing responses to interrogatories in a civil action where the answers might incriminate him in future criminal actions." N. River Ins. Co. v. Stefanou, 831 F.2d 484, 486–87 (4th Cir. 1987).

Petitioner does not appear to dispute that the privilege properly may be invoked in this civil commitment proceeding. Indeed, where petitioner alleges the social media accounts at issue may include photographs or other documents showing respondent engaging in illicit contact with

5

underage children, respondent's responses reasonably could subject him to criminal prosecution.[3] See N. River Ins., 831 F.2d at 486-87; see also Doe v. United States, 487 U.S. 201, 209-10 (1988) (holding the privilege against self-incrimination applies to a "testimonial communication," including verbal or written statements produced during civil discovery, that itself "explicitly or implicitly, relate a factual assertion or disclose information" that is incriminating).

Petitioner contends instead that respondent waived the privilege, relying principally on Rogers v. United States, 340 U.S. 367 (1951). In Rogers, the defendant testified about her participation in the communist party, which at the time was a criminal act. 340 U.S. at 372-73. The Rogers defendant subsequently refused to provide additional details about some of the details of her participation. Id. The Supreme Court held that the defendant waived the privilege, because "where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." Id. at 373; see also Mitchell, 526 U.S. at 322 ("[I]f petitioner had pleaded not guilty and, having taken the stand at trial, testified she did 'some [of the relevant drug distribution activity],' she could have been cross-examined on the frequency of her drug deliveries and the quantity of cocaine involved."). Rogers and Mitchell thus stand for the proposition that a person who testifies about a "criminating fact" cannot later invoke the privilege against self-incrimination

---

[3]The privilege is not applicable where the government agrees not to use the discovery responses in a future criminal prosecution. See Allen v. Illinois, 478 U.S. 364, 368, 375 (1986) (holding privilege against self-incrimination does not apply in civil commitment proceeding where state law prohibits use of compelled answers in subsequent criminal prosecution); Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) ("Our cases indicate . . . that a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination."); see also Mitchell v. United States, 526 U.S. 314, 326 (1999) ("If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared."). Petitioner, however, has not stated that the requested discovery will be used solely for purposes of the instant civil commitment proceeding. In the absence of such assurances, the court must assume petitioner potentially could use petitioner's responses in a future criminal prosecution. This order, accordingly, proceeds on that assumption, and the court's determination set forth herein is limited to such facts.

as to details of the criminal act. 340 U.S. at 373; 526 U.S. at 322.

Here, respondent disclosed at deposition that he had various social media accounts which he accessed during a time when he had absconded from supervision. (Resp't's Dep. Tr. (DE 30-1) at 7-8). Petitioner argues,

> Respondent did not invoke his Fifth Amendment right to remain silent during the deposition, rather, he chose to answer counsel's questions and discuss the existence of several social media accounts, when they were maintained, and by whom they were maintained. . . . Thus, Respondent's disclosure of the existence of social media accounts during his deposition and his admission that such accounts would contain photographs of his time fleeing from supervision precludes his later attempt to conceal the details of such information.

(DE 30 at 9). Respondent's testimony that he previously created or maintained certain social media accounts, however, is not an incriminating statement that would trigger waiver of the privilege. Rogers, 340 U.S. at 373; Mitchell, 526 U.S. at 322; see also McCarthy v. Arndstein, 262 U.S. 355, 359 (1923) ("[W]here the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him."). As respondent emphasizes, the creation or maintenance of social media accounts standing alone is not criminal.

Petitioner relies on one statement from Rogers that read in isolation suggests a broader waiver rule: "[d]isclosure of a fact waives the privilege as to the details." Rogers, 340 U.S. at 373. But Rogers itself confirms that this broad statement refers to the disclosure of a "criminating" fact. The relevant passage provides:

> [W]e [have] held that questions as to connections with the Communist Party are subject to the privilege against self-incrimination as calling for disclosure of facts tending to criminate under the Smith Act. But petitioner's conviction stands on an entirely different footing, for she had freely described her membership, activities and office in the Party. Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the

7

> privilege where response to the specific question in issue here would not further incriminate her. Disclosure of a fact waives the privilege as to details.

Id. at 372–73 (citation omitted). The foregoing discussion makes clear the word "fact" in the last sentence refers to a disclosure that "would further incriminate" the defendant. Describing the rule in a subsequent part of the opinion, the Court explained, "where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." Id. at 373 (emphasis added). The phrase "disclosure of a fact waives the privilege as to the details" therefore refers to "criminating facts" and thus the privilege only is waived as to the details of the newly-disclosed criminal activity. As set forth above, the court finds respondent did not disclose a criminating fact in his deposition.[4]

To the extent petitioner's argument is respondent testified he absconded from supervision, and the social media accounts contain details about his activities while he absconded, petitioner has not demonstrated such disclosure would trigger waiver of the privilege as to any and all crimes purportedly committed while petitioner had absconded. See Rogers, 340 U.S. at 373 (holding the waiver applies to details about the specific criminal offense disclosed, not to other crimes). The scope of the waiver is "determined by the scope of the relevant cross-examination" as to the criminal act disclosed. Mitchell, 526 U.S. at 321. Petitioner has not shown that the contents of social media accounts (which petitioner assumes, but does not know, contain evidence of criminal activity) would

---

[4]Additionally, petitioner's reading of Rogers would permit waiver of the privilege after testimony about essentially any topic, non-criminal on its face (such as existence of social media accounts), that the government believes may provide evidence of criminal activity if further examined. The court does not read Rogers so broadly, particularly in light of the principle that "[t]he privilege against self-incrimination, one of our most cherished constitutional rights, is jealously guarded by the courts." See N. River Ins., 831 F.2d at 486.

be relevant cross examination in a prosecution solely for absconding from supervision.[5]

Respondent also argues he did not waive the privilege against self-incrimination as to his writings. At deposition, respondent testified that he "wrote about [his] experience in Texas [when he had absconded from probation]." (Resp't's Dep. Tr. (DE 30-1) at 10-11). The court agrees respondent did not waive the privilege as to the content of those writings for the reasons explained above: petitioner has not demonstrated that the scope of any purported waiver would extend to the content of those writings.

2. The Discovery Requests

The parties do not address whether the privilege properly may be invoked as to each of the particular discovery requests at issue. Instead, the instant motion argues only that the privilege has been waived. In the absence of argument from the parties with respect to each discovery request, the court declines to sua sponte review the requests individually to determine whether the privilege applies. Accordingly, the court denies the motion to compel as to each request.

3. Privileged Document

In a footnote in its brief, petitioner states respondent refuses to produce his written release and relapse prevention plan based on attorney-client privilege and the attorney work product doctrine. Petitioner argues "such a plan would not be protected by privilege" and thus "should be turned over to Petitioner for review, as release plans may very likely be at issue during the hearing."

---

[5]Petitioner also has not demonstrated that absconding from supervision is a criminal act, disclosure of which would trigger waiver of the privilege. See United States v. Buchanan, 638 F.3d 448, 451 (4th Cir. 2011) ("The term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence."); see also United States v. Soles, 336 F. App'x 287, 289 (4th Cir. 2009) ("Soles had no Sixth Amendment right to a speedy trial because supervised release revocation proceedings are not stages of a criminal prosecution" and collecting cases holding revocation of supervised release standing alone is not considered a criminal offense). Petitioner does not explain whether respondent was on federal or state supervision when he absconded, and does not provide the court with legal authority suggesting absconding from supervision is a crime in the relevant jurisdiction.

9

(Pet'r's Mem. (DE 30) at 13 n.4). Respondent asserts the release plan was drafted solely to assist counsel in preparing for upcoming trial, and thus is not subject to disclosure.

The attorney work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 510 (1947). "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992). If the document does not include an attorney's mental impressions or "opinion work product" it can be discovered "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 250 (4th Cir. 2005).

Here, respondent's counsel represents that the document was prepared after this litigation commenced, and solely to assist counsel in preparation for trial. Accordingly, the document qualifies as attorney work product and may be disclosed only upon a showing of substantial need.[6] See Nat'l Union Fire Ins., 967 F.2d at 984; In re Grand Jury Proceedings, 401 F.3d at 250. Petitioner has not even attempted to show it has a substantial need for the document and has not seriously contested respondent's assertion that the document was prepared in anticipation of litigation. Accordingly, the court denies the motion to compel as to the release plan.

4. Trial Planning

The instant motion states that petitioner may request adverse inference at trial based on

---

[6]Respondent does not argue the document includes attorney opinion work product, which absent waiver generally is not subject to disclosure. Nat'l Union Fire Ins., 967 F.2d at 984.

respondent's refusal to disclose the contents of his social media accounts and the writings discussed above. Additionally, the parties' proposed pretrial order (DE 32) indicates respondent objects to admission of certain exhibits at trial. In the event the parties intend to pursue the adverse inference or evidentiary objections at trial, the parties are DIRECTED to address such issues in their proposed findings of fact and conclusions of law, due on or before **April 15, 2019**.[7] The court also DIRECTS the parties to file with the court any documents subject to objections (that the parties intend to pursue at trial) on or before **April 15, 2019**, under seal if necessary. Objections not addressed in the proposed findings of fact and conclusions of law will be considered waived, except upon a showing of good cause for the omission.

## CONCLUSION

The court DENIES petitioner's motion to compel (DE 29), and DIRECTS the parties to submit argument concerning adverse inference and objections to exhibits on or before **April 15, 2019**, as more particularly set forth above. The court AMENDS its December 12, 2018, order to reflect April 15, 2019, deadline for filing proposed findings of fact and conclusions of law.

SO ORDERED, this the 27th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge

---

[7] The court has extended the current deadline for filing the proposed findings by one day so the deadline does not fall on a Sunday.